## THE BALTIMORE AND OHIO RAILROAD COMPANY *v.* DAVIS

[No. 419, September Term, 1963.]

*Decided July 9, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Fenton L. Martin,* with whom were *Hinkley and Singley* on the brief, for the appellant.

*Amos I. Meyers,* with whom was *Louis J. Glick* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

In this action brought in the Superior Court of Baltimore City by a railroad employee against the employer under the provisions of the Federal Employers' Liability Act for injuries sustained by the employee as a result of having fallen into an elevator shaft, the questions on appeal relate to the sufficiency of the evidence as to employer negligence and the correctness of court instructions that required the jury to use a measure of speculation or conjecture in arriving at its verdict.

Lester Davis, employed by the Baltimore and Ohio Railroad Company (B. & O. or railroad company) as a tallyman and trucker, was assigned to handle freight in an enclosed two floor pier at the Locust Point terminal in Baltimore City. The pier, which extends in a north-south direction with the shore end facing toward the south, is divided on each floor by a fire wall between its east and west sides. In that area of the pier between the fire wall and the shore (the part of the pier with which we are concerned) there are four elevators, two on the east side directly opposite two on the west side. The elevators on the east side of the pier, as well as those on the west side, are approximately one hundred feet apart, one being located toward the fire wall (or north) and the other toward the shore (or south). The elevators are not built against the walls, and each can be entered from either its east or west gate. There is an aisle or passageway on each side of the pier between the outside walls and the elevators.

At the time of the accident, stacks of palletized sugar approximately five feet high were arranged in the center of the second floor extending from the two northern elevators to a point even with the two southern elevators (hereinafter referred to separately as the shore-end east elevator and the shore-end west elevator and collectively as the shore-end elevators).

According to Davis, his foreman told him to bring certain boxes of merchandise from the second floor of the pier to the first. While on the second floor searching for the boxes of merchandise, he walked to the vicinity of the shore-end east elevator and stopped to examine the list of merchandise he was using. The elevator was then on the first floor, but the west gate guarding the elevator shaft was propped six or seven feet above the floor by a board. As he was facing east toward the elevator looking at a box, a fork lift tractor struck him in the back. He slid across the floor on his abdomen and fell into the elevator shaft and landed on his shoulder or side on top of the elevator, and the tractor landed beside him with its blades pointing upwards. Davis further testified that he knew the B. & O. employee, who had been operating a tractor on the second floor on the date of the accident, but did not identify him or anyone else as its operator at the time he said it struck him. Although Davis stated that he had never operated a tractor, his employment was terminated about three weeks later for the unauthorized use of a tractor on January 2, 1959, the date of the accident.

A longshoreman (Leroy Walden), testifying on behalf of Davis, stated that he had been on the second floor of the pier at the time of the accident. As he was walking south in the aisle on the east side of the pier and had gotten about half way between the two east-side elevators, he noticed a man standing with a piece of paper in his hands facing the east gate of the shore-end east elevator. (Note that Davis, by testifying that he was facing east, put himself in the position of facing the west propped up gate.) Walden glanced away, and "all at once" or "just a second later," he heard an impact and someone scream. He went to the elevator shaft and saw Davis and the tractor (with its blades upwards) on top of the elevator. The east gate of the elevator was broken. He did not know where the men who helped Davis out of the shaft had come from and had not seen the tractor at any time until his arrival at the shaft after the accident. But he stated that just before he got to the elevator, after hearing the impact, he saw a man walking away "fast" from the other side (apparently meaning the west side) of the elevator toward the shore-end of the pier. He

saw the man's back, not his face, and knew only that he was tall, heavy set and was wearing a blue coat. He was "pretty sure" that the man was not a longshoreman and "almost sure" that he was a B. & O. employee. When asked whether or not he had seen this man jump off the tractor, he replied that he did not know where the tractor had come from or who was operating it, and that he did not see the man jump off it.

The railroad company produced as a witness the regular operator (Arthur Brown), who had been operating the tractor on the day of the accident. He testified that immediately before the occurrence he had parked the tractor to the south of the shore-end east elevator in order to go to the lavatory. While in the washroom, he heard a noise, came out, and found the tractor in an elevator shaft on the west of the pier. (Since all other witnesses designated the shore-end east elevator as the place of the accident, it may be that Brown meant to say that he had parked the tractor beside the shore-end west elevator and had found it in the elevator shaft of the shore-end east elevator.) Brown also stated that sugar was stacked between the two shore-end elevators.

Another B. & O. employee (Robert Byrd) testified that there were no stacks of sugar between the shore-end elevators and that at the time of the accident he was standing between them; that the tractor was parked beside the shore-end west elevator; and that he saw Davis get on the tractor and back it across the pier through the wooden elevator gate (probably the west side entrance) and into the shore-end east elevator shaft.

Two witnesses were called by Davis in rebuttal. One of them (Freeman Miller), another railroad employee, testified that Byrd worked in the same "sugar gang" as himself and that at the time of the accident he and Byrd, who had his eyes closed, were sitting next to each other on some sugar bags near the shore-end west elevator. He did not witness the accident because the sugar was stacked too high to see the shore-end east elevator, but he did hear a scream. The other witness (Leon St. Rose), another railroad employee and a member of the "sugar gang," testified that Byrd had not been working with them on the day of the accident and that he heard a scream but did not see the accident because he was on the west side of

the pier and the stacked sugar prevented him from seeing the shore-end east elevator. Both Miller and St. Rose ran to the shore-end east elevator shaft after hearing the scream and helped Davis get out.

The railroad company moved for a directed verdict at the close of all the evidence. The motion was denied and the jury returned a verdict for Davis in the amount of $10,000. The court also denied a motion for judgment *n.o.v.*, and this appeal was taken.

The basic issue on this appeal, aside from that concerning the instructions, is whether or not there was sufficient evidence of negligence on the part of the employer to allow the case to go to the jury. This issue is governed by the standards of proof required by the Federal Employers' Liability Act, 45 U.S.C., §§ 51-60, § 51 of which provides in pertinent part:

"Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Although state courts (under § 56 of 45 U.S.C.) have concurrent jurisdiction with the district courts of the United States to try cases brought under the F.E.L.A., the question as to what constitutes negligence under the act is a matter of federal law and the federal decisions are controlling. *Urie v. Thompson,* 337 U. S. 163, 174 (1949).

In *Tennant v. Peoria & P. U. Ry. Co.,* 321 U. S. 29, 32 (1944), the Supreme Court of the United States said that in order to recover under the F.E.L.A., the claimant must prove that the employer "was negligent and that such negligence was the proximate cause in whole or in part of the fatal accident"; that the claimant is required "to present probative facts from

which the negligence and the causal relation could reasonably be inferred"; and that the " 'essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' " However, in *Lavender v. Kurn,* 327 U. S. 645 (1946), the Supreme Court appeared to relax the requirements enunciated in *Tennant* by saying (at p. 653) that "a measure of speculation and conjecture is required" to decide whether there is a reasonable inference of negligence on the part of the employer. Even so, the Court made it clear that there must be "an evidentiary basis" for the jury's verdict and "when there is a complete absence of probative facts to support the conclusion reached" a reversible error occurs. Since *Lavender,* it seems to us that there has been a definite trend in the Supreme Court cases to limit rather than to enlarge the effect of the language employed in the *Lavender* case.

Although jury verdicts under the F.E.L.A. have been allowed to stand even though based on speculation, see, for example, *Gibson v. Elgin, Joliet & Eastern Ry. Co.,* 246 F. 2d 834, 837 (7th Cir. 1957), *cert. den.* 355 U. S. 897 (1957), the denial of *certiorari* does not, as Mr. Justice Frankfurter pointed out in his memorandum filed in 355 U. S. 897, imply approval of a decision for which review is sought. Nor, as was further pointed out in the memorandum, is it to be assumed to be the law of the Supreme Court that "speculation, conjecture and possibilities suffice to support a jury verdict" in F.E.L.A. cases until that Court explicitly so holds. To date it has not done so.

In *Ellis v. Union Pacific R. Co.,* 329 U. S. 649 (1947), it was said (at p. 653) that the F.E.L.A. "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury." Moreover, if there is not a reasonable basis in the record for concluding that there was negligence which caused the injury an appellate court is not precluded from setting aside a jury verdict in favor of the employee. See *Ellis v. Union Pacific R. Co., supra; Eckenrode v. Pennsylvania R. Co.,* 335 U. S. 329 (1948). In *Moore v.*

*Chesapeake & Ohio R. Co.,* 340 U. S. 573, 578 (1951), where the action of a district court in setting aside a jury verdict for the employee was affirmed, it was said that an inference of negligence on the part of the employer in that case "would be speculation run riot" and that "speculation cannot supply the place of proof." And in *Schulz v. Pennsylvania R. Co.,* 350 U. S. 523 (1956), an action under the Jones Act (which is similar to the F.E.L.A.), it was said (at p. 526) that the conclusion reached by the jury must be "grounded on evidence consisting of direct statements by the witnesses or proof of circumstances from which inferences can fairly be drawn."

In determining whether a jury case has been made out under the F.E.L.A., the Supreme Court said in *Rogers v. Missouri Pacific R. Co.,* 352 U. S. 500, 506 (1957), that the test "is simply whether the proofs justify *with reason* the conclusion that employer negligence played any part, even the slightest, in producing the injury * * *. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, *with reason,* the conclusion may be drawn that negligence of the employer played any part at all in the injury * * *. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may *with reason* make that inference." [Italics ours.] See also *Herdman v. Pennsylvania R. Co.,* 352 U. S. 518 (1957), where the Supreme Court affirmed a directed verdict for the employer on the ground that there was no reasonable basis for inferring that employer negligence contributed to the injuries sustained by the employee.

Furthermore, it is interesting to note that even the Seventh Circuit has abandoned the position it took in *Gibson v. Elgin, Joliet & Eastern Ry. Co., supra,* and has recently stated in *Swartz v. N.Y. Central R. Co.,* 323 F. 2d 713, 714 (7th Cir. 1963), that "we are mindful that even though there is only slight evidence of negligence in a [F.E.L.A.] case, the case must be submitted to a jury. Some evidence, nonetheless, of failure to exercise reasonable care, direct or inferential, must be adduced; otherwise, speculation would be substituted for probative facts and reasonable inferences drawn from those facts."

From a careful analysis of the cited cases, and others not herein referred to, we think it is apparent that the conclusion of a jury as to the negligence of an employer within the meaning of the F.E.L.A. must be based on more than mere speculation and conjecture. Rather, such a finding must reasonably be based on the probative facts, or inferences drawn therefrom, of each particular case. When, therefore, a question arises as to the sufficiency of the evidence, it is necessary for the court, before submitting the case to the jury, to appraise those facts which tend to prove that employer negligence played any part in the injury of the employee in order to determine whether there is a reasonable basis to justify a finding of negligence by the jury.

In the case at bar, the injured employee contends that there was sufficient evidence under the F.E.L.A. from which the jury could find that another B. & O. employee negligently operated the tractor which caused him to fall into the elevator shaft and that the railroad was negligent in failing to provide him with a safe place to work. We do not agree.

Considering only that evidence which tends to establish the negligence of the employer, there is no proof, direct or circumstantial, that another railroad employee was operating the tractor which allegedly knocked Davis into the elevator shaft. There was no attempt to prove by Davis who, if anyone, was operating the tractor at the time of the accident. The only witnesses who saw the accident, aside from Byrd who testified that Davis himself backed the tractor into the shaft, was the longshoreman Walden. He testified that he did not see the tractor or know anything about its movements before the accident. He did not see the tractor strike Davis and heard only an impact. Just before he reached the elevator, after the accident, he saw a man walking away fast from the west side of the elevator. He could not see the man's face, but was "almost sure" that he was a railroad employee. He further testified, however, that he did not know whether this man had been operating the tractor. There was therefore no direct evidence as to who was operating it. And the fact that Walden saw a man, whom he surmised was a railroad employee, walking swiftly away from the scene of the accident (but who had not been seen operating the

tractor or jumping from it) does not reasonably support an inference that the unidentified man (even assuming him to be a railroad employee) was operating the tractor or, if he were, that he was operating it in a negligent manner. Such an inference would be mere speculation or conjecture. Since the evidence was legally insufficient to show that a railroad employee was operating the tractor, the issue of employer negligence with respect to the operation of the tractor should not have been submitted to the jury.

Nor do we think that an issue of negligence should have been presented to the jury on the theory that the injured employee was not provided with a safe place to work. An employer is not an insurer of the safety of an employee. *Ellis v. Union Pacific R. Co., supra.* The only duty of the employer in this respect was to provide reasonably safe working conditions and there was no evidence that such was not done here. Nor was there any evidence that the tractor was defective. While it is a fact that bags of sugar were stacked on the floor between the four elevators and that boxes of merchandise were lying near the shore-end east elevator, this was a normal circumstance which would likely exist on any pier used to load and unload freight from ships. Davis testified that the elevator gate was propped open, but by his own statement he was struck while standing six or seven feet from the shaft. The position of the gate therefore had nothing to do with his being struck by the tractor.

Since the issue of employer negligence should not have been submitted to the jury, we hold that the lower court erred in denying the motions for a directed verdict and for a judgment *non obstante veredicto.* We do not reach the question concerning the correctness of the instructions to the jury.

> *Judgment reversed; appellee to pay the costs.*

BRUNE, C. J., and HAMMOND, J., dissent.