655 A.2d 370

Robert Alan HOF

v.

STATE of Maryland.

No. 117, Sept. Term, 1993.

Court of Appeals of Maryland.

March 10, 1995.

582

James Wyda, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

Robert Alan Hof, the petitioner, was tried by a jury in the Circuit Court for Baltimore County for robbery, robbery with a dangerous and deadly weapon, assault, theft, and the unlawful use of a handgun in the commission of a felony. At the close of the evidence, the trial judge instructed the jury to consider the petitioner's confession only if it found beyond a reasonable doubt that the petitioner had been given and knowingly and willingly waived, his *Miranda*[1] warnings. He also told the jury that the burden was on the State to prove, beyond a reasonable doubt, that the petitioner confessed freely and voluntarily. The petitioner's request that the jury be given an additional voluntariness instruction listing the several factors it had to consider in determining whether the petitioner's confession was voluntary was denied. Having been convicted of robbery with a dangerous and deadly weap-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

on and the handgun violation[2] and sentenced to twenty-five years imprisonment without parole, the petitioner noted an appeal challenging that ruling. The Court of Special Appeals affirmed. *Hof v. State,* 97 Md.App. 242, 629 A.2d 1251 (1993). We granted the petitioner's petition for writ of certiorari. The petitioner asks us to consider two questions:

1. Did the trial court's jury instruction regarding the State's obligation to comply with *Miranda* obviate the need for a nonconstitutional voluntariness instruction regarding the petitioner's statement?

2. Did the Court of Special Appeals err in holding that the petitioner failed to present sufficient evidence to generate an instruction regarding the voluntariness of his confession?

## I.

The State's evidence against the petitioner included a confession he made during custodial interrogation. The petitioner moved, prior to trial, to suppress that confession, contending that it was involuntary under Maryland confession law, Article 22 of the Maryland Declaration of Rights,[3] and the 5th and 14th Amendments to the United States Constitution. He also argued that it was given in violation of *Miranda.* As to the latter, he pointed out that he did not initial at least one right, indicating, he argued, that it was not advised or understood. The petitioner also contended that *Miranda* was not complied with because, in advising the petitioner of his right to counsel, the detective indicated that the right applied prior to questioning and did not explain that it also applied during questioning.

Testifying in support of the motion, the petitioner said that when he was arrested on December 18, 1990, he had a $300 a

---

2. The State entered a *nolle prosequi* for the robbery, assault and theft counts.

3. Article 22 of the Maryland Declaration of Rights provides that "no man ought to be compelled to give evidence against himself in a criminal case." It has been held generally to be in *pari materia* with the 5th Amendment of the United States Constitution. *Lodowski v. State,* 307 Md. 233, 249, 513 A.2d 299, 308 (1986).

day cocaine habit. Further, he stated that, on that day, he had intravenously injected three grams of cocaine, starting "early in the morning, going through the passage of the day" and that, at the time of his interrogation, at approximately 6:00 p.m., he was sick from cocaine withdrawal symptoms. He stated that he was nauseous and that "I was sick. Ached all over". Consequently, he asserted he was not thinking clearly at the time he gave his statement; he was "severely depressed from not having any drugs." He further testified that when he informed Detective Gus Vaselaros, one of the interrogating officers,[4] of this, the detective told him that he would be taken to St. Joseph's Hospital as soon as the interrogation was completed.[5] The petitioner pointed out that he was hospitalized shortly after his statement was taken. He was seen by both a psychiatrist and doctor and given "a couple of pills."

Detective Vaselaros' testimony differed considerably from the petitioner's. He testified that, prior to any interrogation, he advised the petitioner of his *Miranda* rights, using the Baltimore County Police Department's standard rights and waiver form,[6] which the petitioner initialed and signed. Detective Vaselaros stated that the petitioner, who was shackled in leg irons throughout the interrogation, which began at approximately 7:00 p.m. in the police captain's office, orally confessed to the robbery of the liquor store, but refused to give a written statement. The detective stated that the

---

4. The petitioner was interrogated by two detectives, Officer Vaselaros and his partner, Officer Phil Wood. Detective Wood did not testify at either the suppression hearing or trial.

5. According to the petitioner, Detective Vaselaros wrote and submitted a report of some kind as a result of being informed that the petitioner was going to kill himself.

6. The Baltimore County Police Department's standard waiver form # 14 informs the suspect that he has the right to remain silent, that anything he says can be used against him in court, that he has the right to an attorney, that an attorney will be provided by the court if he cannot afford one, that he may refuse to be interviewed, and that the waiver of the above rights was done knowingly and voluntarily, without threats, promises, force or duress.

petitioner was taken before the District Court Commissioner between 9:00–9:30 p.m. for a bail hearing.

On cross-examination, Detective Vaselaros confirmed that he took custody of the petitioner at approximately 4:30 p.m., some 2½ hours before the interrogation. He conceded that, although it is standard procedure to have a defendant initial each of the *Miranda* rights, the petitioner did not initial all of them; the petitioner did not initial the one indicating that he had "an absolute right to remain silent" and could not "be compelled to answer any questions and need not assist [his] interrogators in this or any investigation." Detective Vaselaros also conceded that the petitioner looked depressed during the questioning and had informed him of his extensive drug habit, including the fact that the petitioner had been rejected by several drug rehabilitation programs. Moreover, he stated that he believed that the petitioner used several kinds of drugs including "coke, heroin" and "Dilaudid, Percocet [and] Percodan." Detective Vaselaros acknowledged that he was aware, although unsure of the exact time, that the petitioner was taken to a hospital following the interrogation. Detective Vaselaros also admitted informing the petitioner that the police had obtained evidence against him in connection with the Ridgeway liquor store robbery.

The motions court found that the petitioner freely and voluntarily confessed.

### B.

Detective Vaselaros was one of the three State's witnesses who testified at trial. His testimony was similar to that given at the pre-trial suppression hearing. He said that: he took custody of the petitioner at about 4:00 p.m., but the interrogation did not begin until approximately 7:00 p.m.; the petitioner was advised of his *Miranda* rights from a standard waiver form, not all of the provisions of which did the petitioner initial; the petitioner was shackled in leg irons throughout the interrogation; the petitioner informed Detective Vaselaros of his extensive drug habit and that he had been rejected by

several drug rehabilitation programs; Detective Vaselaros knew that the petitioner used all types of drugs including "cocaine and all the hard street stuff as far as, and also prescription drugs, Dilaudid, Percocet, Percodan, whatever"; the petitioner confessed to the robbery of the Ridgeway Liquor store, but refused to give a written statement; and the petitioner was taken to Saint Joseph's Hospital after the questioning. The petitioner did not testify at trial.

At the close of the evidence, the trial court instructed the jury. Because those instructions did not address the confession, the petitioner requested that they be supplemented by reading the confession instruction that he had previously submitted.[7] Although expressing concern that it was not an accurate statement of law and "a bit redundant," the State agreed that the Court's instruction "should include basically what the defense is requesting." The court agreed to "give the MPJI instruction" regarding the jury's role in determining the voluntariness of the petitioner's confession.[8] Instead, however, the court gave the following instruction:

---

**7.** In addition to an instruction on *Miranda* similar to that actually given, by the petitioner's instruction, the jury would have been informed of some of the factors to be considered in making the voluntariness determination, on whom the burden of proof was placed, that the jury could consider the confession along with other evidence, if it found the confession voluntary, and that even if voluntary, the confession must be corroborated.

**8.** *Maryland Pattern Jury Instructions—Criminal* § 318, at 65–66 (1991), captioned "STATEMENT OF DEFENDANT," provides:

Evidence has been introduced that the defendant made a statement to the police about the crime charged. The State must prove beyond a reasonable doubt that the statement was freely and voluntarily made. A voluntary statement is one that, under all circumstances, was given freely. To be voluntary it must not have been compelled or obtained as the result of any force, promises, threats, inducements or offers of reward. In deciding whether the statement was voluntary, consider all of the circumstances surrounding the statement, including:
(1) the conversations, if any, between the police and the defendant;
(2) whether the defendant was warned of [his] [her] rights;
(3) the length of time that the defendant was questioned;
(4) who was present;
(5) the mental and physical condition of the defendant;

You've also heard evidence that the defendant confessed that he committed the crime with which he is charged or the crimes with which he is charged. You are instructed that you must be satisfied beyond a reasonable doubt that the defendant was clearly advised of each of his rights before making a confession while in custody and while undergoing interrogation; otherwise, you are to disregard the alleged confession.

The defendant must have been specifically advised that he has a right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney during any questioning and that, if he cannot afford an attorney, one will be appointed for him prior to any questioning, if he so desires.

You must be satisfied beyond a reasonable doubt that the defendant understood his rights and knowingly and willingly waived his rights prior to making a confession.

The fact that warnings were given does not automatically render a subsequent confession valid. The defendant must have knowingly and intelligently waived his rights. If such a waiver was not made, a confession made during custodial investigation is not a voluntary one. If you have a reasonable doubt as to whether the defendant was properly advised of his rights and waived or gave up those rights, then

---

(6) whether the defendant was subjected to force or threat of force by the police;

(7) the age, background, experience, education, character, and intelligence of the defendant;

[ (8) whether the defendant was taken before a district court commissioner without unnecessary delay following arrest, and if not, whether that affected the voluntariness of the statement];

(9) any other circumstances surrounding the taking of the statement.

[If you find that the statement was actually made, you may not consider it unless you find, beyond a reasonable doubt, that the statement was voluntarily made.]

If you find beyond a reasonable doubt that the statement was voluntary, give it such weight as you believe it deserves. If you do not find beyond a reasonable doubt that the statement was voluntary, you must disregard it.

you must not consider the confession as part of the evidence in arriving at your verdict.

And the burden is on the State to prove beyond a reasonable doubt that the alleged confession was freely and voluntarily made.

Gentlemen, that concludes my instructions.

Defense counsel responded with a request for further instructions:

I thank the Court for giving the instruction so far. I think the Court has to also advise the remaining aspect of the second prong; that they must determine beyond a reasonable doubt that the confession is voluntary, which under all the circumstances, is the product of a free and unconstrained will which has not been overborne or compelled.

And tell them what they have to consider—the length of time the defendant was questioned, physical and mental condition, period of time that elapsed between being advised, other persons present at the time of making the alleged confessions, all the other circumstances surrounding, including the age, background, education, experience, intelligence. And then say that the burden is on the State to prove beyond a reasonable doubt that the confession was freely and voluntarily made and without any threats, implied or direct, and that it's not voluntary if there's any inducement or promises of leniency, and unless this is done, that it must be disregarded.

Siding with the State and ruling that the points were adequately covered, the court refused the request, noting:

There is no evidence to support the additional language that you [defense counsel] referred to.... The instruction that I gave to the jury on the confession is perfectly clear.

As mentioned, the petitioner was convicted and unsuccessfully appealed to the Court of Special Appeals.

## II.

The petitioner asserts that the trial court erroneously refused to instruct the jury, as requested, on common law voluntariness. He contends that an instruction regarding the admissibility of a confession, based solely on compliance with *Miranda*, does not satisfy the common law voluntariness test. He argues that the Maryland common law requires a separate and distinct voluntariness inquiry, in addition to *Miranda* and that the inquiry it mandates, which preceded *Miranda* by almost one hundred years, was not eliminated by the Supreme Court's holding in that case. The State, on the other hand, contends that the trial court adequately instructed the jury on the admissibility of the petitioner's confession. It reasons that a jury instruction on compliance with *Miranda* obviates the need for an instruction on common law voluntariness because if the jury found that the petitioner, after proper advice, confessed only after knowingly and willingly waiving *Miranda* rights, it necessarily must have found the confession voluntary in the common law sense. In fact, the State argues that a *Miranda* instruction is the equivalent of a voluntariness instruction since a finding of a valid *Miranda* waiver presumes that there is no factual basis for undermining the voluntariness of the confession.

That is what the Court of Special Appeals held. *See Hof,* 97 Md.App. at 294, 629 A.2d at 1278. Concurring with the State's reasoning, it concluded that compliance with *Miranda* satisfies compliance with the Maryland nonconstitutional voluntariness standard. According to the intermediate appellate court, "*Miranda* did not establish a new standard; it prescribed a uniform and more efficient means for implementing an old standard" in one circumstance—custodial interrogation. *Id.,* 97 Md.App. at 267, 629 A.2d at 1264. It explained that *Miranda* first established a bright-line formula:

From the very fact of custodial interrogation, the hearing judge must presume the initial presence of involuntariness/compulsion. Compulsion no longer had to be proved on a case-by-case basis, requiring a look at the multitudi-

nous influences working on each suspect and a look, as well, at the multitudinous internal factors indicative of the resilience or resistance level of each individual suspect. As a bright-line rule, such compulsion or involuntariness would now be presumed.... *Miranda* then established, with its familiar catechism and attendant waiver requirement, a set of easily administered "litmus paper tests," which the prosecution would not be permitted to shortcut but which, if satisfied, would dissipate or rebut the presumptive involuntariness/compulsion. (Citations omitted).

The court then opined:

[i]t is clear that *the rule established in this State is in accord with the voluntariness test followed by the Supreme Court.* 'The basic standard governing the admissibility of an extrajudicial statement is whether, considering the totality of the circumstances, the statement was voluntary.... To be voluntary, a statement cannot be "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." ' (citations omitted).

*Id.* at 284, 629 A.2d at 1272. Moreover, the court said:

Both manifestations [Maryland common law and the federal formulation] of the test sprang from the same source. There is no indication that either has mutated in any way from the prototype. There are numerous indications that both have remained unswervingly true to the original. The definitions of voluntariness enunciated by both the Supreme Court and the Maryland courts are *indistinguishable from one another,* just as they are both indistinguishable from the prototypical definition.

*Id.* at 283, 629 A.2d at 1272. It concluded:

When only a Maryland evidentiary challenge is made, a challenged statement must satisfy the traditional voluntariness standard in the traditional way. Where both a state and federal challenge is raised but *Miranda* is for some reason inapplicable, traditional voluntariness (in both guises) must be satisfied in the traditional way. Where, on the

other hand, both a state and federal challenge is raised and *Miranda* is found to have been both applicable and satisfied, the underlying traditional voluntariness standard has been fully implemented and is, presumptively at least, fully satisfied in the process.

We are not unmindful that in the last decade we have sometimes, as a matter of appellate style, chosen to consider the traditional voluntariness test under the common law of Maryland before we have looked to the federal constitutional mandate. In retrospect, we consider that approach generally ill-advised. Faced with a choice between a short, efficient way to resolve an admissibility problem and a longer way to do the same thing, we think it expedient to try the short, efficient way first. Such a choice, moreover, is the one most likely to avoid a needless duplication of effort.

*Id.* at 294, 629 A.2d at 1278.

In *Miranda*, the Supreme Court held that, in a criminal case, the prosecution may use statements derived from custodial interrogation only if it can demonstrate that it used procedural safeguards effectively to secure the constitutional privilege against self-incrimination.

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.

*Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Stated differently, prior to the commencement of interrogation, the accused must be advised that he or she has, and can elect to exercise, certain rights. Unless those rights are freely and knowingly waived, any statement the accused might have made is inadmissible. As to the standard for the proof of waiver, the Court said, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. It is this aspect of *Miranda* which the

Court of Special Appeals contends makes the voluntariness inquiries required by *Miranda* and the Maryland common law identical.

Under Maryland's common law, a confession is presumptively inadmissible "unless it is 'shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary.'" *See Hoey v. State*, 311 Md. 473, 483, 536 A.2d 622, 627 (1988) (quoting *Hillard v. State*, 286 Md. 145, 150, 406 A.2d 415, 418 (1979); *see also State v. Kidd*, 281 Md. 32, 35–6, 375 A.2d 1105, 1108, *cert. denied, Maryland v. Kidd*, 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977); *Biscoe v. State*, 67 Md. 6, 7, 8 A. 571, 571 (1887)). As early as *Nicholson v. State*, 38 Md. 140, 153 (1873), almost a century before *Miranda*, this Court stated:

> [I]t is very clear upon all the authorities, that if the confession of the appellant had been induced by any threat of harm, or promise of worldly advantage held out to him . . ., it ought to be excluded.

In determining whether a confession is plagued with any "coercive barnacles", "the standard . . . is whether, under the totality of all the circumstances, the statement was given freely and voluntarily." *Gilliam v. State*, 320 Md. 637, 650, 579 A.2d 744, 750 (1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991) (quoting *Lodowski v. State*, 307 Md. 233, 254, 513 A.2d 299, 310 (1986)); *Lewis v. State*, 285 Md. 705, 721, 404 A.2d 1073, 1082 (1979); *Gill v. State*, 265 Md. 350, 358, 289 A.2d 575, 580 (1972); *Hadder v. State*, 238 Md. 341, 357, 209 A.2d 70, 76 (1965); *Combs v. State*, 237 Md. 428, 435, 206 A.2d 718, 722 (1965). We addressed the nature of the common law voluntariness inquiry in *Lodowski, supra*, citing *State v. Hill*, 2 Md.App. 594, 601–02, 236 A.2d 27, 30–1 (1967):

> [T]he constitutional inquiry is not whether the conduct of [the authorities] was shocking, but whether [the accused's] confession was free and voluntary, *viz*, whether it was extracted by any sort of threats, or violence, or obtained by any direct or implied promises, however slight, or by the

exertion of any improper influence.... Otherwise stated, the test of the admissibility of [a] confession is whether [the accused's] will was overborne at the time he confessed ...; or whether his confession was the product of a rational intellect and a free will ...; or whether his statement was "freely self-determined."

Thus, a statement is involuntary if it is induced by force, undue influence, improper promises, including "any official promise which redounds to the benefit or desire of the defendant." *Reynolds v. State*, 327 Md. 494, 508–09, 610 A.2d 782, 789 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 981, 122 L.Ed.2d 134, (1993) (quoting *Stokes v. State*, 289 Md. 155, 160, 423 A.2d 552, 554 (1980)).

■■■■ The "totality of the circumstances" includes a number of factors, *e.g.* where the interrogation was conducted, *Burton v. State*, 32 Md.App. 529, 534, 363 A.2d 243, 246 (1976); *Shedrick v. State*, 10 Md.App. 579, 582, 271 A.2d 773, 775 (1970); *Bernos v. State*, 10 Md.App. 184, 188, 268 A.2d 568, 571 (1970); its length, *Hines v. State*, 58 Md.App. 637, 658, 473 A.2d 1335, 1345, *cert. denied*, 300 Md. 794, 481 A.2d 239 (1984); *Finke v. State*, 56 Md.App. 450, 488, 468 A.2d 353, 373 (1983), *cert. denied*, 299 Md. 425, 474 A.2d 218, *cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984); who was present, *Cummings v. State*, 27 Md.App. 361, 373–74, 341 A.2d 294, 302–03, *cert. denied*, 276 Md. 740 (1975); how it was conducted, *Combs*, 237 Md. at 435, 206 A.2d at 721–22; *Clarke v. State*, 3 Md.App. 447, 450, 240 A.2d 291, 294 (1968); its content, *Johnson v. State*, 303 Md. 487, 513, 495 A.2d 1, 14 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Bowers v. State*, 298 Md. 115, 129, 468 A.2d 101, 108 (1983), *cert denied*, 479 U.S. 890, 107 S.Ct. 292, 93 L.Ed.2d 265 (1986); *Radovsky v. State*, 296 Md. 386, 401, 464 A.2d 239, 247 (1983); whether the defendant was given Miranda warnings, *Kidd*, 281 Md. at 36, 375 A.2d at 1108; *Cunningham v. State*, 58 Md.App. 249, 261–62, 473 A.2d 40, 46, *cert. denied*, 300 Md. 316, 477 A.2d 1195 (1984); *Thomas v. State*, 3 Md.App. 101, 104, 238 A.2d 558, 560 (1968); the mental and

physical condition of the defendant, *Dempsey v. State,* 277 Md. 134, 150–54, 355 A.2d 455, 463–65 (1976); *Mundell v. State,* 244 Md. 91, 93, 223 A.2d 184, 185 (1966); *Combs,* 237 Md. at 435, 206 A.2d at 721–22; the age, background, experience, education, character, and intelligence of the defendant, *Lodowski,* 307 Md. at 254–55, 513 A.2d at 311; *Combs,* 237 Md. at 435, 206 A.2d at 721–22; when the defendant was taken before a court commissioner following arrest, Maryland Code (1974, 1989 Repl.Vol.), § 10–912(b) of the Courts and Judicial Proceedings Article; *Woods v. State,* 315 Md. 591, 613, 556 A.2d 236, 246–47 (1989); *Simkus v. State,* 296 Md. 718, 727, 464 A.2d 1055, 1060 (1983), and whether the defendant was physically mistreated, *see Lodowski,* 307 Md. at 254–55, 513 A.2d at 311, physically intimidated or psychologically pressured. *Combs,* 237 Md. at 435, 206 A.2d at 721–22. A defendant's will can be overborne and, hence, his or her confession rendered inadmissible, as a result of the use of drugs. Although being under the influence of narcotics does not automatically render a confession involuntary, it is certainly a factor to be considered along with all the other applicable circumstances. *See Campbell v. State,* 240 Md. 59, 63–4, 212 A.2d 747, 750 (1965); *Bryant v. State,* 229 Md. 531, 535–36, 185 A.2d 190, 192 (1962).

■ In Maryland, an involuntary statement may not be used against a defendant, both because of the common law concern for fairness, *see Brittingham v. State,* 306 Md. 654, 664, 511 A.2d 45, 50 (1986) (involuntary confessions are likely to be untrue and prejudicial); *see also Hillard,* 286 Md. at 157, 406 A.2d at 422, state constitutional requirements, and the constitutional requirements of the 5th Amendment, applied to the states through the 14th Amendment. Thus, it is clear that a defendant's confession is admissible only if it is "(1) voluntary under Maryland nonconstitutional law, (2) voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 22 of the Maryland Declaration of Rights, and (3) elicited in conformance with the

mandates of *Miranda."* *Hoey,* supra, 311 Md. at 480, 536 A.2d at 625 (1988) (citations omitted).[9]

*Miranda* did not supersede the existing law on voluntariness. It merely "impressed procedural safeguards on the traditional test of voluntariness." *Brittingham,* 306 Md. at 662, 511 A.2d at 49; *Kidd, supra,* 281 Md. at 36, 375 A.2d at 1108. Indeed, several years after the Supreme Court's decision in *Miranda,* the Court of Special Appeals, in an opinion which we affirmed, after distinguishing Maryland's common law protections and procedures regarding the admissibility of confessions from the protections mandated by *Miranda,* commented:

> The root problem giving rise to the present appeal is the failure to appreciate that in 1966 the warning and waiver requirements mandated by *Miranda v. Arizona* ... did not supersede preexisting constitutional law on the admissibility of confessions; the requirements of *Miranda* simply superimposed additional criteria for admissibility upon that preexisting law. Distracted by the glitter of this new surface layer of quasi-constitutionality, our case law has tended to ignore the substratum of pre-*Miranda* law which lies undisturbed in bedrock immutability beneath the more volatile overlay of *Miranda.*

*Kidd v. State,* 33 Md.App. 445, 446, 366 A.2d 761, 763 (1976), *aff'd, State v. Kidd,* 281 Md. 32, 375 A.2d 1105, *cert. denied, Maryland v. Kidd,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977). We continued to sound the same theme two years later:

> In explaining why we believe the self-incriminatory statement made by the petitioner here should not have been placed in evidence in his case, it appears wise to recall that, regardless of constitutional strictures, this Court for more than one hundred years has adhered to the tenet that, with regard to fairness in the conduct of a trial, Maryland criminal law requires no confession or other significantly

---

9. As the second consideration, "voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 22 of the Maryland Declaration of Rights," is not before us, we will not address it.

incriminating remark allegedly made by an accused be used as evidence against him, unless it first be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary.

*Hillard,* 286 Md. at 150–51, 406 A.2d at 418. In a footnote, we expressly recognized the argument that the Maryland and federal voluntariness standards are the same. Despite the presence in the record of "an alleged *Miranda* rights waiver signed by both the petitioner and his attorney at the time the complained of statement was made, which related that '[y]ou are further advised that you are not promised anything to make a statement and no threats or inducements have been made to compel you to make a statement,'" we declined to resolve whether an instruction requiring the jury to determine compliance with *Miranda* obviates the need for an instruction on the common law voluntariness standard. We explained:

As is evident from our decision in this case, it is usually preferable to determine initially whether the activity complained of comports with the requirements of this State's nonconstitutional law, and then, only if the court finds that it so complies, does it become necessary to reach the issue of whether any constitutional stricture prohibits the conduct in question.

We in no way attempt in this case to evaluate whether federal or Maryland constitutional law establishes the same voluntariness test as that enunciated in this opinion. We rest our decision solely on Maryland nonconstitutional law because of the well-settled principle "that courts should not decide constitutional issues unnecessarily." ... Whether United States and Maryland constitutional strictures are similar to each other or similar to our nonconstitutional requirements is irrelevant, since the activity complained of here does not satisfy the requirements of this State's nonconstitutional law.

*Id.* at 150, n. 1, 406 A.2d at 418, n. 1 (Citation omitted).

█ The admissibility of a defendant's statement whether, as a factual matter, in the State's case in chief or, as a

prophylactic matter, to impeach the defendant, *see Britting-ham*, 306 Md. at 664, 511 A.2d at 50, depends on whether it was made freely, knowingly, without coercion or inducement. Prior to *Miranda*, the inquiry that necessitated into the admissibility of a defendant's confession, the establishment of which is the State's burden, *see* discussion *infra*, was focused on factors relevant to that determination. When the Supreme Court decided *Miranda*, it promulgated a waiver requirement as a precondition to the admissibility of the defendant's statement. *Kidd*, 281 Md. at 37, 375 A.2d at 1108. Thus, after *Miranda*, in cases in which it is applicable, the focus is on whether *Miranda* warnings were given, and whether the rights therein encompassed were understood and subsequently waived. As the intermediate appellate court recognized, *Hof*, 97 Md.App. at 268, 629 A.2d at 1264, and the *Miranda* court specified, *see e.g.*, 384 U.S. at 458, 86 S.Ct. at 1619, 16 L.Ed.2d at 714, in the absence of those warnings, the involuntariness and/or compulsion of the statement is presumed.

■ Whether the police informed the defendant of his or her *Miranda* rights before the defendant made a statement is not the sum and substance of voluntariness; meticulous compliance with *Miranda* does not answer the question whether the confession was voluntarily made. All of the circumstances under which the statement was made, both before and after *Miranda* warnings were given, need also to be considered. Thus, the voluntariness determination requires the jury to consider factors other than compliance with *Miranda*. *See Sims v. Georgia*, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967). *See also Maryland Pattern Jury Instructions—Criminal* § 318 at 65–66 (1991). Among other things, the circumstances may include how long the defendant was in custody, his or her mental capacity, and, as in the case *sub judice*, the extent to which the defendant was under the influence of narcotics.

■ A jury instruction focused primarily on whether there has been compliance with *Miranda* is insufficient as a voluntariness instruction. This is so because such an instruction

does not provide the jury with guidance necessary to determine whether the confession was made voluntarily; it does not define "voluntary" or provide a meaningful explanation of the voluntariness standard. Indeed, it may even misdirect the jury's attention—by requiring the jury to look at only one of the elements of voluntariness, rather than the total picture.

The instruction in this case asked the jury to determine whether the petitioner was clearly advised of his *Miranda* rights before confessing, whether he understood them, and both knowingly and willingly waived them prior to confessing. The trial court made no attempt to identify for the jury the factors it must consider in resolving that latter issue—whether the waiver was knowing and willing. Aside from the burden of proof, which was appropriately allocated to the State, the only guidance the trial court gave as to how the jury was to make those determinations pertained to what the *Miranda* rights must contain—that the defendant has the right to remain silent, that anything he said "can and would be used against him in a court of law," and that, during questioning, he has a right to the presence of an attorney, including an appointed one, should he be unable to afford his own. The portion of the instruction which advised that the mere giving of *Miranda* warnings did not render the confession valid, only a knowing and intelligent waiver of those rights would do, simply repeated, without additional guidance, what had already been said. The instruction thus was more concerned with compliance with *Miranda*, than with voluntariness. Because compliance with *Miranda* is an issue most appropriately resolved as a matter of admissibility, the court's function, *see Coyote v. United States*, 380 F.2d 305, 309–10 (10th Cir.), *cert. denied*, 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967) and, after the court has found a confession to be admissible, voluntariness is ultimately a jury function, it is the latter rather than the former that ought to be the subject of jury instructions. In other words, whether the *Miranda* decision has been complied with is a matter for the court rather than the jury.

It is implicit in the Court of Special Appeals' conclusion that compliance with *Miranda* necessarily satisfied the Maryland common law voluntariness standard, with all of its permutations; that the same test of voluntariness applies to the waiver of *Miranda* rights. Indeed, it was on that assumption that the intermediate appellate court traced the Maryland common law and federal voluntariness standard and determined that their content was identical. That, however, is not dispositive of the validity of the subject instruction, for either of two reasons. First, as already noted, whether *Miranda* has been complied with, while a factor of voluntariness when considered alone, addresses the admissibility, *vel non*, of a confession, an issue exclusively for the trier of fact. An instruction with that focus inappropriately requires the jury to make determinations outside its area of responsibility; hence, ordinarily, it ought not be given. Second, however accurate the intermediate appellate court may be with respect to the source and content of the voluntariness standard, the subject instruction is deficient in that it inadequately instructed the trier of fact on voluntariness. Although the instruction is clear that the "jury must be satisfied beyond a reasonable doubt that the defendant understood his rights and knowingly and willingly waived his rights prior to making a confession," it pointedly does not provide the jury with any guidance as to how that determination is to be made; it does not define "voluntary" or enumerate the factors relevant to deciding that the waiver was knowing and willing. In short, it provided assistance only with respect to the assessment of whether the confession was admissible.

We hold that the instruction given is wholly inadequate. Not only is its focus on an issue not properly considered by the jury, but to the extent it addresses voluntariness at all, it focuses on but one of the factors to be considered in the voluntariness equation; it fails totally to address, and provide guidance to the jury as to, how the jury should assess whether the petitioner's statement was voluntary, i.e., given knowingly and willingly. Without such guidance, the court, in effect, did what we very clearly said, in *Hillard*, should not be done—it

disregarded "Maryland criminal law, independent of any federal constitutional requirement," in favor of deciding the case on the basis of *Miranda.* 286 Md. at 153, 406 A.2d at 420.

### III.

The State argues alternatively that, even if a *Miranda* instruction does not obviate the need for a voluntariness instruction, the trial court nevertheless did not err in refusing to give one. This is true, it says, because the issue of voluntariness was not generated by the evidence. According to the State, unless there is evidence raising specific questions about the voluntariness of a particular confession, the admittedly "bare bones" instruction that "the burden is on the State to prove beyond a reasonable doubt that the confession was freely and voluntarily made," was adequate. It points out, in that regard, that the petitioner did not testify at trial. While he presented evidence at the suppression hearing that his confession was not made voluntarily, the State concludes, the petitioner presented no such evidence at trial.

The trial court proceeded on that basis: "[t]here is no evidence to support the additional language that you [defense counsel] referred to. The instruction that I gave to the jury on the confession is perfectly clear." So, too, did the Court of Special Appeals:

> In the present case, by contrast, no instruction was denied on any sub-issue that was generated by the evidence. None of the additional instructions requested by the appellant dealt with matters that had been developed before the jury. Let it be carefully noted in this regard that facts brought out before the judge alone in a pretrial suppression hearing, before a jury is even impanelled, are not facts that generate a jury issue calling for a jury instruction ... Reciting an abstract laundry list of factors that might be relevant in other circumstances is not necessary if such factors are not pertinent to issues presented to the jury for resolution by it.

*Hof v. State,* 97 Md.App. at 295–96, 629 A.2d at 1278–79.

██ It is now well settled
that a defendant in a criminal case is deprived of due
process of law if his conviction is founded, in whole or in
part, upon an involuntary confession, without regard for the
truth or falsity of the confession.... Equally clear is the
defendant's constitutional right at some stage in the pro-
ceedings to object to the use of the confession and to have a
fair hearing and a reliable determination on the issue of
voluntariness, a determination uninfluenced by the truth or
falsity of the confession,

*Jackson v. Denno,* 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–
81, 12 L.Ed.2d 908, 915–16 (1964), which determination must
"appear from the record with unmistakable clarity." *Kidd,*
281 Md. at 37, 375 A.2d at 1109 (quoting *Sims v. Georgia,* 385
U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598 (1967)).
In Maryland, both the trial court and the jury must pass upon
the voluntariness of a defendant's confession. Thus, under the
Maryland procedure, a two-tiered approach, the voluntariness
of a defendant's statement must be proven twice. In *Demp-
sey,* supra, 277 Md. at 143–46, 355 A.2d at 460 (quoting *Day v.
State,* 196 Md. 384, 399, 76 A.2d 729, 736 (1950)), this Court
explained the procedure as follows:

"The practice in this State, approved in many cases, is that
the court first hears evidence without the jury to determine
whether a confession is voluntary and should be admitted.
If it decides to admit it, the same evidence is then given to
the jury, as it has the final determination, irrespective of the
court's preliminary decision, whether or not the confession
is voluntary, and whether it should be believed. In so
doing, the jury is entitled to have before it all of the
evidence which affects the voluntary character of the docu-
ment, and which the court passed upon in admitting it."

*See also Jackson v. Denno,* 378 U.S. at 395, 84 S.Ct. at 1791,
12 L.Ed.2d at 926 (In its application, the admissibility of a
defendant's statement must first be determined by the trial
judge out of the presence of the jury as a mixed question of
law and fact); *Gill,* 265 Md. at 357–58, 289 A.2d at 579 and
cases cited therein; E. Cleary, *McCormick on Evidence*
§ 161, at 430–34 (3d ed. 1984).

■ The trial court makes the threshold voluntariness determination, a mixed question of law and fact. Examining the totality of the circumstances, it assesses whether the confession was voluntarily made. *Gill,* 265 Md. at 358, 289 A.2d at 579, (quoting *Smith v. State,* 237 Md. 573, 581, 207 A.2d 493, 497 (1965) and *Ralph v. State,* 226 Md. 480, 487, 174 A.2d 163, 167 (1961), *cert. denied.,* 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613 (1962)). If the trial court determines that the statement was not made voluntarily, it will declare it inadmissible. That completely resolves the issue; it never becomes one for the jury. *Id.* at 358, 289 A.2d at 579. If, on the other hand, the court finds the statement voluntary, it will admit it and its voluntariness then becomes an issue which the jury must ultimately resolve. *Id.*

■ The jury's voluntariness determination also requires consideration of the totality of the circumstances surrounding the making of the statement. *See Hillard,* 286 Md. at 151, 406 A.2d at 419. If it finds the statement to have been voluntarily made, it considers it along with the other evidence in the case in resolving the merits. *See Smith,* 237 Md. at 581, 207 A.2d at 497; *Ralph,* 226 Md. at 487, 174 A.2d at 167; *Smith v. State,* 189 Md. 596, 606, 56 A.2d 818, 822 (1948). If, however, it decides that the statement was not voluntary, it disregards the statement. *See Dempsey,* 277 Md. at 144–45, 355 A.2d at 460; L. McClain, *Maryland Evidence* § 514.3, at 625–26 (1987, 1990 Supp.); J. Murphy, Jr., *Maryland Evidence Handbook* § 1303(A)(2), at 468–69 (1989, 1990 Supp.).

■ When the confession is challenged, both at the threshold, before the trial court, and, ultimately, before the jury, the burden is on the State to prove its voluntariness; it is the "government [which] shoulders the responsibility of showing affirmatively that the inculpatory statement was freely and voluntarily made and thus was the product of neither a promise nor a threat." *Hillard, supra,* 286 Md. at 151, 406 A.2d at 419. Maryland, like the majority of the states, holds that the State's threshold burden is to establish the voluntariness of the confession by a preponderance of the evidence.

*Hillard,* 286 Md. at 151, 406 A.2d at 419; *Kidd,* 281 Md. at 38, 375 A.2d at 1109; *see also State v. Washington,* 57 N.C.App. 309, 291 S.E.2d 270, *petition denied,* 306 N.C. 563, 294 S.E.2d 228 (1982); *State v. Johnson,* 304 N.C. 680, 285 S.E.2d 792 (1982); *People v. Markham,* 49 Cal.3d 63, 260 Cal.Rptr. 273, 775 P.2d 1042 (1989). The State's ultimate burden, however, is to prove voluntariness to the jury, beyond a reasonable doubt. *Kidd,* 281 Md. at 38, 375 A.2d at 1109. In a case where *Miranda* is applicable, and at issue, the State must also prove, again, both at the threshold and, ultimately, to the trier of fact, "that there has been compliance with the *Miranda* safeguards." *Kidd,* 281 Md. at 37, 375 A.2d at 1109.

The State's burden of proof is triggered by "proper objection." *Id.* at 38, 375 A.2d at 1109. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, 607– 08, *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977); *Jackson v. Denno,* 378 U.S. at 380, 84 S.Ct. at 1783, 12 L.Ed.2d at 918; *Tucker v. State,* 237 Md. 422, 425, 206 A.2d 691, 693 (1965); *State v. Mullin,* 249 Iowa 10, 85 N.W.2d 598, 602 (1957); *Berry v. State,* 4 Okla.Crim. 202, 111 P. 676, 678 (App.1910); *Duncan v. State,* 278 Ala. 145, 176 So.2d 840, 856 (1965); *Nathan v. State,* 235 Ark. 704, 361 S.W.2d 637, 638 (1962). Whether an objection to the admissibility of a confession is a proper one, *i.e.,* effectively preserves the issue sought to be raised, whether it be traditional voluntariness, constitutional voluntariness, or compliance with *Miranda's* prophylactic safeguards, is determined by reference to State procedural requirements, *i.e.,* State rules regarding the form and timing of objections. *Kidd,* 281 Md. at 38, 375 A.2d at 1109, citing *Mapp v. Ohio,* 367 U.S. 643, 658, n. 9, 81 S.Ct. 1684, 1693, n. 9, 6 L.Ed.2d 1081, 1092, n. 9 (1961).

The relevant procedural requirements in Maryland are contained in Rule 4–252. Rule 4–252(a), dealing with mandatory motions, in pertinent part, provides:

In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are

waived unless the court, for good cause shown, orders otherwise:

\* \* \* \* \* \*

(4) An unlawfully obtained admission, statement, or confession;

\* \* \* \* \* \*

Unless the court otherwise directs, the motion shall be in writing, stating the grounds for which it is made and the relief sought, section (d),[10] and "shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court...." Section (b).[11] Such motions, "to the extent practicable", are to be decided prior to the day of trial. Section (f). "A pretrial ruling denying the motion to suppress is reviewable on a motion for new trial or on appeal of a conviction." Section (g)(2). Although this Court has not yet directly so held,[12] *but see*

---

**10.** Section (d) provides:

(d) *Content.* A motion filed pursuant to this rule shall be in writing unless the court otherwise directs, shall state the grounds upon which it is made, and shall set forth the relief sought. A motion alleging an illegal source of information as the basis for probable cause must be supported by precise and specific factual averments. Every motion shall contain or be accompanied by a statement of points and citations of authorities.

**11.** Section (b), time for filing mandatory motions, provides:

A motion under section (a) of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213(c), except when discovery discloses the basis for a motion, the motion may be filed within five days after discovery is furnished.

**12.** The issue in *Brittingham v. State*, 306 Md. 654, 511 A.2d 45 (1986) was different. In that case, the defendant received a favorable ruling on his suppression motion—although finding the confession to be voluntary, the trial court suppressed it because of a *Miranda* violation. The State sought to use the confession to impeach the defendant, to which efforts the defendant interposed a general objection. The Court held: "In light of the motion to suppress and the pre-trial ruling that the statement was voluntary, this general objection was sufficient to preserve all grounds for review in accordance with then Maryland Rule 522(d) [4–323(a)] and 736 a. [4–256(a) and (b)]." *Id.* at 661, 511 A.2d at 48 (footnote omitted). The defendant had to object in that case in

*Jordan v. State,* 323 Md. 151, 159, 591 A.2d 875, 879 (1991), the Court of Special Appeals has construed the predecessor to this Rule, Rule 736 e.2., to mean "that whenever a motion is filed seeking to suppress one of the types of evidence specified in Rule 736 a.3. or 4., the lower court's ruling on the motion is, ... preserved for appellate review, even if no contemporary objection is made at trial." *Jackson v. State,* 52 Md.App. 327, 331, 449 A.2d 438, 441, *cert. denied,* 294 Md. 652 (1982).

Prior to trial, the petitioner timely moved to suppress his custodial statement. Moreover, consistent with the requirements of Rule 4–252(b), he did so in writing, stating the grounds on which he challenged admissibility and the relief sought. Particularly, as relevant to the case *sub judice,* the petitioner alleged, "[t]hat any statement/confessions taken from the defendant were involuntary and/or elicited during custodial interrogation without observance of procedural requirements of law." The motion was denied following a full hearing, at which the petitioner testified that he had intravenously injected three grams of cocaine on the day of his arrest; that at the time of his interrogation he was sick from cocaine withdrawal symptoms; that, being "severely depressed from not having any drugs," he was not thinking clearly when he gave his statement; and that Detective Vaselaros told him that he would be taken to St. Joseph's Hospital for treatment as soon as the interrogation was completed.

Although testifying at the suppression hearing, the petitioner elected not to testify at trial. Consequently, there is in this case something of an unusual twist: the evidence adduced at the threshold level was different from, and certainly more complete on the voluntariness issue, especially as to the nexus between the confession and the inducement the petitioner claims produced it, than that adduced before the jury. Nevertheless, having mounted a proper challenge, pursuant to Rule

---

accordance with Rule 4–323 because the confession was being offered directly contrary to the court's ruling and he was not asked to state his reason for the objection. The court referred to Rule 736 g.2. only because it authorized the use of the suppressed confession for impeachment purposes.

4–252(g)(2), to the admission of his confession, the petitioner preserved, for appellate review, his objection to the trial court's pretrial ruling.[13] It is not that ruling that he wishes reviewed, however.

Remarks of the trial court, made when refusing to supplement its instructions, suggest that it believed that to generate the voluntariness issue, the petitioner must have produced, at trial, evidence concerning his reason for confessing, just as he did at the suppression hearing. The Court of Special Appeals' opinion is more explicit. It asserts: "no one instruction was denied on any sub-issue that was generated by the evidence. None of the additional instructions requested by the appellant

---

**13.** Pursuant to Rule 4–323(a), objection to the admissibility of evidence is waived, unless the defendant objects, either generally or, at the request of the court, with specific grounds, at the time [it] is offered or as soon thereafter as the need to object to its admissibility becomes apparent. See also Maryland Rule of Evidence 5–103(a)(1), which provides:

> (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling, and
> (1) Objection—in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was requested by the court or required by rule; . . .

In *State v. Kidd*, 281 Md. 32, 38, 375 A.2d 1105, 1109, *cert. denied, Maryland v. Kidd*, 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977), this Court focused on the predecessor to Rule 4–323, Rule 522(d), as the applicable rule encompassing the admissibility of confessions and admissions. *See Jones v. State*, 9 Md.App. 455, 457, n. 9, 265 A.2d 271, 280, n. 9, *cert. denied*, 400 U.S. 906, 91 S.Ct. 148, 27 L.Ed.2d 144 (1970) ("Even though the court determines preliminarily that a confession is admissible, objection must be made when it is offered before the trier of fact in order to preserve the question of its admissibility on appeal."). Notwithstanding that when *Kidd* and *Jones* were decided, prior Rule 736g.2. and present Rule 4–252(g)(2) were identical, it is Rule 4–252, specifically providing for the review of suppression rulings, rather than Rule 4–323, generally applicable to the admission of evidence, which applies. *See Jackson v. State*, 52 Md.App. 327, 330–31, 449 A.2d 438, 440–41, *cert. denied*, 294 Md. 652 (1982) (the more specific rule overrides the more general one). At trial, the petitioner objected when the prosecutor asked the arresting officer whether the petitioner understood the rights he was given. He interposed no objection, however, when the officer testified that the petitioner admitted involvement in the criminal activities on trial.

dealt with matters that had been developed before the jury."
*Hof,* 97 Md.App. at 295, 629 A.2d at 1278. Pointing out that
"facts brought out before the judge alone in a pre-trial sup-
pression hearing, before a jury is even empaneled, are not
facts that generate a jury issue calling for a jury instruction,"
*id.,* the intermediate appellate court opined:

> The appellant, for instance, testified at the pre-trial sup-
> pression hearing. When the circumstances surrounding the
> giving of the confession were replayed before the jury,
> however, the appellant did not testify. At the suppression
> hearing, the appellant testified that when the statement was
> taken from him, he was sick from narcotic withdrawal and
> that the detective promised to take him to St. Joseph's
> Hospital after he gave a statement. None of that was
> brought out before the jury, however, and it did not, there-
> fore, generate any issue calling for a jury instruction. Re-
> citing an abstract laundry list of factors that might be
> relevant in other circumstances is not necessary if such
> factors are not pertinent to issues presented to the jury for
> resolution by it.

*Id.* at 295–96, 629 A.2d at 1279.

What is sought to be reviewed is the trial court's refusal to
propound a voluntariness instruction to the jury. Thus, the
issue is whether that instruction properly has been generated
by the evidence, whether, stated differently, "proper chal-
lenge" to the admission of a confession necessarily presents
for review the voluntariness of a confession.

On the other hand, it has been held that "whenever a
confession is introduced into evidence and instructions as to its
voluntariness are requested, the trial judge must administer
the proffered instruction regardless of any personal belief in
the absence of evidence necessary to support the contention of
involuntariness." *Bellamy v. State,* 50 Md.App. 65, 73, 435
A.2d 821, 825 (1981). In that case, there was evidence pre-
sented to the jury that the interrogating officer told the
defendant that "I can't do anything but I will talk to the
State's Attorney," *id.* at 69, 435 A.2d at 823, and testimony by

the defendant that the investigating officer indicated that his giving a statement "would help but it wouldn't" guarantee anything for his codefendant. *Id.* at 71, 435 A.2d at 824. The defendant requested that the jury be instructed that it could not consider a previously admitted confession until it had found beyond a reasonable doubt that the confession was made freely and voluntarily. *Id.* at 73, 435 A.2d at 825. The trial court refused to give the requested instruction, not because it inaccurately stated the law, but because it believed that the record evidence did not support the defendant's contention that his confession was involuntary. It was after having first determined that the record evidence supported the requested instruction that the intermediate appellate court alternatively made the above holding, citing as implicit authority, *Dempsey, supra,* 277 Md. at 146–50, 355 A.2d at 461–63; *Gill, supra,* 265 Md. at 358, 289 A.2d at 579; *Linkins v. State,* 202 Md. 212, 221, 96 A.2d 246, 251 (1953); *Darby v. State,* 45 Md.App. 585, 594, 414 A.2d 248, 253 (1980); Maryland Criminal Jury Instructions § 2.25.[14] *Bellamy,* 50 Md.App. at 73–4, 435 A.2d at 825–26.

---

**14.** This appears to be consistent with the practice in Massachusetts. Massachusetts, like Maryland, has a two-tier system for the processing of a defendant's confession. "If the judge decides that [a defendant's incriminating statements] are admissible, he should then 'instruct the jury that the Commonwealth has the burden of proving beyond a reasonable doubt that the statement[s] [were] voluntary and that the jurors must disregard the statement[s] unless the Commonwealth has met its burden.'" *Commonwealth v. Vazquez,* 387 Mass. 96, 438 N.E.2d 856, 860 (1982), quoting *Commonwealth v. Tavares,* 385 Mass. 140, 430 N.E.2d 1198, 1206 (1982). The court's duty to ask the jury to pass on voluntariness does not arise, however, unless voluntariness is a live issue at the trial. *Commonwealth v. Parham,* 390 Mass. 833, 460 N.E.2d 589, 595 (1984); *Commonwealth v. Alicea,* 376 Mass. 506, 381 N.E.2d 144, 154 (1978). What constitutes a "live issue at trial" was addressed in *Parham:*

Generally, submission of the voluntariness issue to the jury must be the subject matter of an objection, exception, or request for instruction in the absence of conflicting testimony concerning voluntariness. If there is evidence on the issue, there is an obligation on the judge sua sponte to submit the issue to the jury on appropriate instructions.... In the absence of an objection, exception, or request for instruction, review of failure to submit the voluntariness issue is confined to a determination whether, under G.L.c. 278, § 33E, there

The court was persuaded by Maryland's two-tier approach to establishing voluntariness. In that regard, it stressed that the burden of proving voluntariness was allocated to the State, emphasizing the different roles of the judge and jury—"the primary role of the judge is to rule upon the admissibility of evidence, while the jury's function is to determine the weight to be given such evidence." *Id.* at 72, 435 A.2d at 825. Of particular importance to the intermediate appellate court was the fact that, unless the jury finds the confession voluntary beyond a reasonable doubt, it must disregard—not consider—it. *Id.* at 73, 435 A.2d at 825.

 We are, of course, aware that Maryland Rule 4–325(c) provides:

(c) *How Given.* The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

That rule has been interpreted to require that a requested instruction be given only when there is evidence in the record to support it. *See State v. Martin,* 329 Md. 351, 356–57, 619 A.2d 992, 994 (1993); *Rubin v. State,* 325 Md. 552, 585, 602 A.2d 677, 693 (1992); *Johnson v. State,* 303 Md. 487, 512, 495 A.2d 1, 13 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Smith v. State,* 302 Md. 175, 179, 486 A.2d

---

has been a showing of "grave prejudice or substantial likelihood that a miscarriage of justice has occurred."
*Id.* at 595 (quoting *Commonwealth v. Brady,* 380 Mass. 44, 410 N.E.2d 695, 701 (1980)) (citations omitted). *See also Tavares,* 430 N.E.2d at 1205 ("At trial, the defendant failed to raise the issue of voluntariness, and the defendant requested no instructions on this issue. At no time did the defendant's testimony focus on the involuntariness of his statements."); *Commonwealth v. Chung,* 378 Mass. 451, 392 N.E.2d 1015, 1020 n. 8 (1979) (notwithstanding lack of objection or exception at trial, extensive psychiatric evidence presented at trial required the trial court to instruct jury on voluntariness.); *Commonwealth v. Cole,* 380 Mass. 30, 402 N.E.2d 55, 62 (1980) (same).

196, 198 (1985); *Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344, 1348 (1984); *Gooch v. State,* 34 Md.App. 331, 335, 367 A.2d 90, 93 (1976), *cert. denied,* 280 Md. 735 (1977); *Evans v. State,* 28 Md.App. 640, 669, 349 A.2d 300, 320 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976). That interpretation certainly is appropriately applied when the defendant has the burden of going forward, as in the case of an affirmative defense.[15] *See, e.g., Richmond v. State,* 330 Md. 223, 234–35, 623 A.2d 630, 635–36 (1993); *State v. Faulkner,* 301 Md. 482, 502, 483 A.2d 759, 770 (1984); *Bradford v. State,* 234 Md. 505, 509, 200 A.2d 150, 152 (1964); *Tripp v. State,* 36 Md.App. 459, 464, 374 A.2d 384, 388, *cert. denied,* 281 Md. 745 (1977). But that is not the only context in which it has applicability. Where the State, and only the State, has a burden, a timely requested instruction on every essential question or point of law pertinent to the crime charged, *see Blackwell v. State,* 278 Md. 466, 477, 365 A.2d 545, 551 (1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977); *Hardison v. State,* 226 Md. 53, 60, 172 A.2d 407, 411 (1961); *Jackson v. State,* 46 Md.App. 325, 329, 416 A.2d 1353, 1355 (1980); *Tripp v. State, supra,* 36

---

**15.** An affirmative defense "[i]n pleading [is a] matter asserted by [a] defendant which, assuming the complaint to be true, constitutes a defense to it ... affirmative defenses in criminal cases include insanity, intoxication, self-defense, automatism, coercion, alibi, and duress." Blacks Law Dictionary 60 (6th ed. 1990). *See Treece v. State,* 313 Md. 665, 671, 547 A.2d 1054, 1057 (1988); *Davis v. State,* 237 Md. 97, 102, 205 A.2d 254, 258 (1964), *cert. denied,* 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); *Evans v. State,* 28 Md.App. 640, 723–24, 349 A.2d 300, 350 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976); *Jackson v. State,* 22 Md.App. 257, 263, 322 A.2d 574, 577 (1974); *Chandler v. State,* 7 Md.App. 646, 650, 256 A.2d 695, 697 (1969). *See also* Wayne R. LaFave & Austin W. Scott, *Handbook on Criminal Law* § 8, at 47 (1972). When the defendant advances an affirmative defense, he or she does have a burden to produce "some" evidence. *See State v. Martin,* 329 Md. 351, 359, 619 A.2d 992, 995–96 (1993); *Dykes v. State,* 319 Md. 206, 215, 571 A.2d 1251, 1256 (1990); *Sims v. State,* 319 Md. 540, 553, 573 A.2d 1317, 1323 (1990).

It has been held that a presumption of voluntariness places on a defendant the burden of going forward, at the suppression hearing, with evidence of a lack of voluntariness. *Tavares, supra,* 430 N.E.2d at 1205. The presumption dissipates once the defendant has produced "some evidence that the statement was involuntary," *Id.* It does not apply at trial.

Md.App. at 463, 374 A.2d at 388, must be given, whether or not the defendant produces any evidence or even mounts a defense.

This Court has not had the occasion to consider, or decide, the meaning of Maryland Rule 4–325 in the context of a confession, alleged by the defendant to have been involuntarily made. None of the cases on which *Bellamy* relies was in a posture wherein the determination was required to be made. In none of them was it necessary to decide what, if anything, beyond the pretrial motion to suppress was required to be shown to generate the voluntariness issue. In fact, the facts of those cases suggest that evidence tending to prove involuntariness must be in the record before an instruction on the point is required to be given. In those cases, essentially the same evidence was presented to the jury, including, in most of them, testimony by the defendant, as had been presented on the motion to suppress. Thus, they are examples of the usual case, in which the same evidence as was previously presented to the court for its voluntariness determination, "is then given to the jury, as it has the final determination, irrespective of the court's preliminary decision, whether or not the confession is voluntary, and whether it should be believed." *Day v. State,* 196 Md. at 399, 76 A.2d at 736.

In *Dempsey, supra,* the critical issue was the propriety of the trial court's advising the jury that, after having taken testimony on the issue, it had "found by a preponderance of the evidence that the statement was voluntary" and that "it was a voluntary statement in every regard." *Id.* at 137, 355 A.2d at 457. Having resolved that issue in favor of the defendant, the Court proceeded to consider whether the error was harmless. *Id.* at 150, 355 A.2d at 463. In reaching the conclusion that it was not, the Court observed:

> Of course, if the State's evidence of voluntariness were uncontradicted, there would be no rational basis for a jury conclusion that the confession was involuntary, and thus the error in the instruction would have "in no way influenced the verdict" and would be deemed harmless.

*Id.* at 151, 355 A.2d at 463, citing *Robinson v. State,* 249 Md. 200, 216–17, 238 A.2d 875, 884–85, *cert. denied,* 393 U.S. 928, 89 S.Ct. 259, 21 L.Ed.2d 265 (1968). It rejected the intermediate appellate court's conclusion that the testimony of the defendant and his wife did not contradict the State's voluntariness evidence because it concerned only the fact of intoxication and did not directly address the relationship between the defendant's intoxication and the confession. *Id.* While certainly not requiring that the defendant's confession be found to be involuntary, the Court opined that the defendant's testimony, and that of his wife, were "sufficient to raise a legitimate jury issue as to the voluntariness of the confession." *Id.* at 154, 355 A.2d at 465. That evidence was:

Michael Dempsey testified that he had been drinking continuously for two days prior to his arrest, that he could not remember what he and the police officer discussed, and that his excessive drinking caused "blackout spells" which accounted for his inability to remember what occurred at the police station. Dempsey's wife testified that he had been drinking steadily for two entire days without eating, that he was drunk when he left his hotel room with the police officer, and that her husband did not really understand what the police officer was talking about.

*Id.* at 154, 355 A.2d at 465.

The propriety of ordering a limited remand for the purpose of determining the voluntariness of a defendant's confession was the issue on which we granted certiorari in *Gill, supra.* No jury instruction was involved in the case. Indeed, it was the defendant's testimony, given at trial, *albeit* for the limited purpose of challenging the voluntariness of his confession, that gave rise to the issue in the case. It was this State's well-settled two-tier practice employed to determine the voluntariness of a defendant's confession that caused the Court to conclude that a limited remand to make that determination was inappropriate. Thus, the Court concluded that "[t]he admissibility of a confession is always an integral part of the trial. This is not only true of the confession, per se, but it also encompasses the entire process of ascertaining, prima facie,

that it was legally obtained," *id.* at 357, 289 A.2d at 579, and that

> [t]herefore, it becomes quite apparent that a remand solely for a redetermination of the confession's voluntariness can never be permitted in a jury trial since even if the trial judge again concludes the statement was voluntary, that only establishes, prima facie, it was uncoerced. The jury still must have the opportunity to consider the evidence pertaining to its voluntariness before deciding whether the accused is guilty or innocent. This inviolable jury function would be eliminated unless the judgment was reversed and. a new trial awarded.

*Id.* at 358–59, 289 A.2d at 580.

Both aspects of the voluntariness inquiry were addressed in *Linkins, supra,* but without directly considering the preservation issue this case presents. With respect to the threshold admissibility question, the Court rejected the defendant's argument that it was error to admit his confession "because of the fact that he was only eighteen years of age; was held at least twelve hours before the written statement was taken; and because he was refused an attorney, for whom he had expressed a desire prior to the taking of the confession...." *Id.* at 218, 96 A.2d at 249. We observed that the defendant had been married, had not been questioned for longer than 15 or 20 minutes before confessing, and the police denied that he had requested a lawyer prior to making the confession. *Id.* at 219, 96 A.2d at 249. We also noted that "unless the facts showed that the illegal arrest in itself constituted such duress as to make the confession involuntary the same rule as to admissibility of the confession is applicable as where the arrest is legal," *id.* at 220, 96 A.2d at 250, *discussing Grear v. State,* 194 Md. 335, 71 A.2d 24 (1950), and that "[t]he failure to have counsel present, even where the accused is not permitted to consult counsel, is not sufficient to deny admission of a confession, if the confession was given voluntarily." *Id.,* (quoting *Audler v. Kriss,* 197 Md. 362, 368, 79 A.2d 391, 395 (1951)).

We also were required to address the role of the jury once the confession had been admitted into evidence. The defendant argued that the trial court erred in refusing to permit his counsel to argue that his confession was involuntary. After reviewing our prior cases on the point, we concluded that the admissibility of a confession is not the equivalent of proof of its reliability. *Id.* at 221–22, 96 A.2d at 250–51. While the former is a matter for the court, we reiterated, the assessment of the latter is a matter for the jury. *Id.* Because the defendant's trial testimony confirmed the facts which the confession related, we held that the trial court's error in refusing to permit the argument was harmless. *Id.* at 224, 96 A.2d at 251–52.

Although our cases only impliedly do so, we now hold that to merit a jury instruction on voluntariness, one that does more than advise the jury that the State must prove voluntariness, it is not enough that the trial court, at a pretrial hearing, triggered by the defendant's motion to suppress, has considered and resolved the issue against the defendant; rather the issue must be generated before the jury. Consistent with the rule in other states, *e.g. State v. Mullin*, 249 Iowa 10, 85 N.W.2d 598, 600 (1957) ("Conflicts in the testimony giving rise to a question of fact concerning [the confession's] procurement must under proper instructions be submitted to the jury."); *People v. Barker*, 60 Mich. 277, 27 N.W. 539, 547 (1886) (quoting *Commonwealth v. Piper*, 120 Mass. 185, 188 (1876) (same)); *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 843, 204 N.E.2d 179, 183 (1965); *Berry, supra*, 111 P. at 679; *State v. Robinson*, 238 S.C. 140, 119 S.E.2d 671, 683 (1961), this requires, as the trial and intermediate appellate courts held, that there be evidence *at trial* from which the trier of fact could conclude that the confession was involuntary.

The two-tier approach to the voluntariness decision anticipates and, therefore, allows for, jury reconsideration of the trial court's determination; it does not absolutely mandate that it occur. Indeed, unless the issue is pursued at trial, there is absolutely no reason for it to be even submitted to the

jury.[16] Logically, jury reconsideration can only occur when the same or substantially the same evidence is presented both at the pretrial hearing and at trial. Moreover, to require that the jury be instructed consistent with the *Maryland Pattern Jury Instructions, supra,* as to each and every conceivable circumstance which might bear on voluntariness, when there is no supporting evidence, would be to instruct the jury on an abstract proposition of law and require it to speculate, practices that this Court has long rejected. *See Myers v. Bright,* 327 Md. 395, 405, 609 A.2d 1182, 1187 (1992); *Baltimore & O.R. Co. v. Davis,* 235 Md. 568, 575, 202 A.2d 348, 353 (1964); *McAlister v. Carl,* 233 Md. 446, 456, 197 A.2d 140, 146 (1964); *Olney v. Carmichael,* 202 Md. 226, 232, 96 A.2d 37, 39 (1953). Thus, even though the defendant may request a jury instruction on voluntariness, unless it has been generated by evidence, from whatever source, presented before the jury, the requested instruction need not be given.

Evidence of the petitioner's extensive drug habit was presented to the jury. Detective Vaselaros, as we have seen, testified, on cross-examination and without objection, that the petitioner informed him that he had a $300 a day habit, that he used various kinds of drugs, from cocaine to prescription drugs, and that he had been rejected by drug treatment facilities. There was also testimony that the petitioner was taken to the hospital subsequent to the interrogation. What

---

**16.** This approach is consistent with decisions in those states, including, as we have seen, Massachusetts, see note 14, *supra,* that indulge the presumption that confessions are voluntary. *See, e.g. Mullin,* 85 N.W.2d at 602; *Cochran v. State,* 117 So.2d 544, 545 (Fla.Dist.Ct.App. 1960); *State v. Roland,* 336 Mo. 563, 79 S.W.2d 1050, 1051 (1935); *State v. Hamer,* 240 N.C. 85, 81 S.E.2d 193, 195 (1954); *Berry v. State,* 111 P. 676, 678 (Okla.Crim.App.1910). Read consistently with *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), ensuring that the burden of proof is always on the State, they require the defendant to produce some evidence that the confession is involuntary before a voluntariness hearing, outside the jury's presence, is required to be held. *See e.g. Tavares,* 430 N.E.2d at 1205. For jury reconsideration to occur, as previously indicated, it would follow that some evidence of involuntariness would likewise have to be presented at trial, before the jury.

was not in front of the jury was evidence concerning the petitioner's state of mind at the time his statement was taken. Unlike at the suppression hearing, at which the petitioner testified to being nauseous and that he was promised that he would be taken to the hospital after he made his statement, there was no direct evidence of a nexus between the petitioner's drug usage and the statement he gave. Indeed, the detective answered "no" in response to a question asking if the petitioner told him whether the petitioner used drugs that day.

The critical focus in an involuntariness inquiry is the defendant's state of mind. Whether the defendant's incriminating statement was made voluntarily or involuntarily must depend upon that defendant's mental state at the time the statement was made. *See Martin, supra,* 329 Md. at 361, 619 A.2d at 997. That question, which is one of fact and subjective in nature, "must be determined by a consideration [of a defendant's] acts, conduct and words." *Taylor v. State,* 238 Md. 424, 433, 209 A.2d 595, 600 (1965), citing *Midgett v. State,* 216 Md. 26, 41–2, 139 A.2d 209, 217 (1957) and *Bird v. State,* 231 Md. 432, 436, 190 A.2d 804, 806 (1963). *See also Watts v. State,* 99 Md. 30, 57 A. 542 (1904) (defendant's mental condition at the time of confession is relevant to the question of voluntariness). Ordinarily, it must be proven circumstantially. *See State v. Jenkins,* 307 Md. 501, 513–15, 515 A.2d 465, 471–72 (1986).

To generate the voluntariness issue, there must be "some evidence" bearing on it. *See State v. Evans,* 278 Md. 197, 208, 362 A.2d 629, 635 (1976). While the usual way of proving state of mind is by testimony of the person whose state of mind is at issue, *see Martin, supra,* 329 Md. at 361, 619 A.2d at 997; *Sims v. State,* 319 Md. 540, 554–55, 573 A.2d 1317, 1324 (1990); that is not the only source of such evidence. *Sims, supra,* 319 Md. at 554–55, 573 A.2d at 1324; *Dykes, supra,* 319 Md. at 216–17, 571 A.2d at 1257; *Evans, supra,* 278 Md. at 208, 362 A.2d at 635. Moreover,

*[s]ome evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—"some," as that word is understood in common, everyday usage. It need not rise to the level of "beyond a reasonable doubt" or "clear and convincing" or "preponderance." The source of the evidence is immaterial; it may emanate solely from the defendant. It is no matter that the [involuntariness] claim is overwhelmed by evidence to the contrary.

*Dykes,* 319 Md. at 216–17, 571 Md. at 1257. So long as there is some evidence which supports the defendant's claim that his confession was involuntary, the issue has been generated.

▆▆▆ While, whether the defendant was under the influence of a drug at the time of giving the incriminating statement is a factor to be considered in determining the voluntariness of that statement, *see Townsend v. Sain,* 372 U.S. 293, 307–08, 83 S.Ct. 745, 754–55, 9 L.Ed.2d 770, 782 (1963), it is clear that evidence of mental impairment from drugs or alcohol does not *per se* render a confession involuntary, and that a court may admit a confession into evidence if it concludes that it was freely and voluntarily made despite the evidence of mental impairment. *See Bryant v. State,* 229 Md. 531, 535–36, 185 A.2d 190, 192 (1962); *Mundell v. State,* 244 Md. 91, 93, 223 A.2d 184, 185 (1966). *See also Wiggins v. State,* 235 Md. 97, 102, 200 A.2d 683, 686, *cert. denied,* 379 U.S. 861, 85 S.Ct. 123, 13 L.Ed.2d 64 (1964) (effects of withdrawal from excessive alcohol use do not necessarily render confession involuntary). In this case, there is no direct evidence that the petitioner was under the influence of drugs at the time of the confession. The question is whether the jury could infer that he was from the petitioner's extensive drug history and the other pertinent circumstances.

The evidence in this case consisted of nothing more than that the petitioner had a drug habit, *albeit* a severe one. There is nothing, other than this fact, in this record to suggest that there was any nexus between his habit and his confession. Indeed, there is nothing even approaching the evidence found sufficient in *Dempsey.* In that case, testimony by the defen-

dant and his wife was such as to permit, although not require, an inference that, at the time of making the incriminating statement, the defendant was so under the influence of alcohol as to render the statement involuntary; "the evidence of drinking and intoxication was sufficient to raise a legitimate jury issue as to the voluntariness of the confession." *Dempsey*, 277 Md. at 154, 355 A.2d at 465.

The voluntariness of the confession not having been generated, at trial, the instruction the court actually gave, requiring the jury to find the statement voluntary beyond a reasonable doubt, was sufficient.

*JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.*